[No. 963. Decided March 1, 1895.]

SAMUEL LIVESLEY, *Appellant*, v. GEORGE W. PIER, *Respondent*.

COMPROMISE OF SUIT — EXECUTION OF RELEASE OF CLAIMS — SUFFICIENCY OF EVIDENCE — AUTHORITY OF ATTORNEY TO COMPROMISE — INSTRUCTIONS — JUDICIAL COMMENT.

A verdict for defendant in an action on account will not be disturbed when there is proof that plaintiff executed to defendant a release covering the subject matter of the controversy, plaintiff's signature being proved by several witnesses, and his execution of the release being proved by his attorney and the notary before whom it was acknowledged.

Where there is testimony in an action tending to show that, in a former suit pending between the parties, their attorneys got together and made a settlement which was agreed to by their principals, an instruction is proper which charges the jury that, where attorneys have effected a compromise of a pending suit and dismissed it with knowledge of their principals, who have indorsed the settlement, no other action can be maintained by one against the other for the same matter, until the dismissal of such suit has been set aside and vacated in a proper action.

Where the issue between parties is as to whether a release of the matters in controversy had been executed by plaintiff to defendant, it is not error for the court to state before the jury that if the contract of release introduced in evidence had been made by the plaintiff and had not been since altered, it would end the case.

*Appeal from Superior Court, King County.*

*Fishback & Ferry (Henry F. McClure*, of counsel ), for appellant:

Attorneys cannot make contracts or compromises without the consent and authority of their clients, which will operate injuriously to their interests. The making of such contract or compromise is no part of the professional duty or responsibility of an attorney at law. *De Louis v. Meek,* 50 Am. Dec. 491; *Huston v. Mitchell,* 16 Am. Dec. 506; *Fitch v. Scott,* 34 Am. Dec. 86; *Harshey v. Blackmarr,* 20 Iowa, 179 ( 89 Am. Dec. 520); *Brooks v. O'Hara,* 8 Fed. 533; *United States v. Throckmorton,* 98 U. S. 66; *Underwood v. Brockman,* 29 Am. Dec. 407.

*Thompson, Edsen & Humphries,* for respondent:

The proposition of law that before the appellant could sue the respondent upon any matters that were settled and compromised, the settlement must be set aside and the respondent placed in *statu quo,* is too plain for argument. *Wood v. Nichols,* 6 Wash. 96; *Johnson v. Burnside,* 52 N. W. 1057; *Bowman v. Ayers,* 21 Pac. 405; Mechem, Agency, §§ 148–150.

The opinion of the court was delivered by

DUNBAR, J.—The appellant is a dealer in hops, residing at Seattle, Washington. Respondent is also a dealer in hops, residing in the city of New York, and doing business under the firm name of Pier Bros. During the year 1890 appellant was engaged in buying hops for respondent on commission, and in securing consignments to respondent. The appellant claims he bought a lot of hops, and consigned them to the respondent, for which he never received his pay; while

the claim of the respondent is that the hops were purchased by appellant for the respondent, but that after the purchase, and before the respondent learned of the purchase of the same, the price of hops advanced, and that appellant sold the hops so purchased to other parties, and kept the profit made from the sale of respondent's hops. At all events there was a dispute between them concerning their hop account, and in December, 1890, appellant went to New York city to have a settlement of his account with respondent. While he was there, respondent brought two suits against him, one for ten thousand dollars against appellant alone, and the other for five thousand dollars against appellant and his two sons, who compose the firm of George F. Livesley & Company, dealers in hops in the state of Washington, the respondent claiming that appellant was a member of the firm of George F. Livesley & Company. After his return from New York city the appellant brought this action against the respondent, alleging that the amount of $——was due him upon their hop transactions. The respondent appeared in this action, and filed his answer and counterclaim to the complaint, pleading in bar a settlement and payment of one thousand dollars and dismissal of the actions in New York above mentioned. He also pleaded the release executed by appellant, and, as a counterclaim, the difference between respondent and appellant, setting up the claims of respondent against appellant for the appropriation of the money belonging to respondent by appellant in the purchase and sale of hops, and the profit made thereon above referred to. The issues were tried before a court and jury. The jury found that the respondent did not owe appellant anything. Judgment was rendered in favor of the respondent for costs, and the case is appealed here.

One ground of appeal is that the evidence does not sustain the verdict in this case. It seems to us, from a perusal of the whole record, that the verdict is amply sustained by the testimony. The defendant offered an agreement upon which the settlement of the cases in New York were based, and a release from Livesley, the appellant, to Pier, the respondent, of all claims of any kind up to date. This release, in so many words, discharged "George W. Pier, doing business under the firm name of Pier Brothers, his heirs, executors and administrators, of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, premises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against them, or either of them, I ever had, or which I, my heirs, executors or administrators hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents; [dated] January 9th, 1891;" and was filed as defendant's exhibit B., and signed by the appellant, Samuel Livesley.

Defendant's exhibit A is a document stating that—

"Whereas, Samuel Livesley and George W. Pier have come to an agreement, satisfaction and compromise of all their differences, including all claims and demands of every kind and nature held by either of said parties against the other, up to this date, including the claims mentioned in the annexed schedules marked A, B and C," [which schedules contain the matters and claims which are the subject of this suit] "now said parties agree as follows: Said Livesley accepts from said George W. Pier one thousand dollars in cash and an assignment of his said claim for $1,120.68 against George F.

Livesley & Company, mentioned in schedule C; said assignment being without recourse to George W. Pier, in full accord, satisfaction, compromise and settlement of all claims and demands of every kind up to this date, including the matters mentioned in schedule A, as well as all other matters, should there be any, growing out of or in any way connected with their business relations up to that date, or with any contracts made in relation to the hop business up to this date; and the said George W. Pier hereby releases and discharges said Samuel Livesley of and from all claims, demands, liabilities and causes of action, including the claim for damages for $10,000, embraced in the complaint in the action in the supreme court where said Pier is plaintiff and said Livesley is defendant."

This agreement is signed by Samuel Livesley, who affixed his seal.

It appears that upon the receipt of these agreements Pier withdrew the suits against Livesley, and paid to Wade, who was the agent and attorney of Livesley, the one thousand dollars mentioned, one of the checks being for $500, in favor of the appellant, and the other for $500, in favor of Wade, the attorney. According to the testimony of Pier, and it is not contradicted, Wade retained the check of $500 for his services, and paid the other over to Livesley. In his testimony Livesley denies having executed or signed these instruments, and appellant insists in his brief that the only evidence that he did so is found in the testimony of Wade, but we think the appellant is mistaken as to the testimony. The signature attached to these instruments was proved by several witnesses to be the signature of Livesley; in fact, Livesley himself testifies that it looked like his signature, and that if it were not attached to a paper the conditions of which he did not intend to consent to, that he should say that it was his signature. There was also an acknowledgment to these

instruments, so far as the face of the instrument is shown, by a notary public, one Henry Werzbach, who certifies, over his notarial seal, that Samuel Livesley was personally known to him to be the individual described in and who executed the foregoing agreement, and that he acknowledged the execution thereof; and Werzbach swears that Livesley did so execute these instruments. Livesley himself testifies to having executed some instruments of release, but he thinks that they only went to the extent of settling the business which was then being adjudicated, and that the matters and things which he is now suing upon were not inserted in such agreement. We think, however, the fact of the positive testimony of Wade, and the positive testimony, acknowledgment and certificate of the officer, Werzbach; and the further fact that the signature to these instruments is proven to be the signature of Livesley; and the further fact that there is no indication of any change or erasure on the face of these instruments, render the testimony overwhelming in support of the contention of respondent that these instruments were executed by Livesley. Livesley says that he did not authorize the delivery of these instruments to Pier, but that he gave them to Wade to show to Pier, as Wade represented to him that Pier would not pay the money without he was shown this release. It seems to be rather a foolish contention that Pier would withdraw his suits against Livesley and pay out money on a settlement which was based upon an agreement, simply upon the sight of the agreement, without obtaining possession of it. So far, then, as the testimony is concerned, even conceding that there was an intelligent contradiction, there was evidently sufficient testimony which, if uncontradicted, would have sustained the verdict, and it will, therefore, not be disturbed by this court.

It is claimed also by the appellant that the court erred in its instructions. The instructions are lengthy, and the instructions objected to are also too lengthy to be inserted here. The main contention, however, is embraced in substance in the following instruction:

"The court instructs you that when parties employ attorneys to manage their affairs in a suit pending in court, said attorneys have authority to do anything that is proper in the management of their business, and that if negotiations are commenced for the compromise and settlement of a law suit and clients are informed of the fact, and indorse the settlement, and authorize the attorneys to make it, and the attorneys go forward and make the compromise and settlement and close up the matter and have said suit that is pending between the parties dismissed and settled, then so long as the said suit is dismissed it is a bar to any other suit for the same matter until the proper action has been brought to set aside and vacate the dismissal of the suit and restore the parties to the same position in which they were before said compromise and settlement; and until they have been restored in a court of equity or in some other proceeding according to law and to the rights that existed prior to the dismissal of said suit and placed in the same position they were before said suit was compromised and dismissed, then no action can be maintained by one against the other."

It is contended that there was no testimony which would justify this instruction because there was no testimony tending to show that in a suit pending the attorneys got together and made a settlement which was agreed to by their principals. We think, however, there was some testimony which would justify this instruction—the testimony of Wade; and whether this testimony is reasonable, or unreasonable, it went to the jury, and they were the judges of its reasonableness.

Neither do we think the contention of the appellant is justified, that "the court virtually tells the jury in these instructions, that if the attorneys for the respective parties chose to get together and make a settlement, they had a right to do so, whether specially authorized so to do or not, merely by reason of the relation of attorney and client, and whether the client had any knowledge of the terms of the settlement before the same was made, or not, or whether or not the client assented thereto, or, in fact, knew anything about it." As we understand the instructions of the court, no such idea was intended to be enunciated, and we do not think the jury would get such an idea from the instructions themselves. The court had previously laid down the question of authority to the jury in the following language:

"If a client intrusts a paper to his attorney, the attorney's possession is the client's possession, that is, the paper still continues to be in the possession of the client. So far as third parties are concerned, if these papers are delivered by the attorney, it must be by reason of the fact that the client authorized him so to do. If the matter to be settled thereby is settled out of court, the attorney has no other or greater authority than such as is expressly given to him by his client, and it is the duty of the person with whom he deals to ascertain the extent of the authority conferred upon the attorney. An attorney at law has no right to release a cause of action without the consent of his client."

This instruction was as favorable to the appellant as it should have been. The appellant complains that while this is true, there are some portions of the charge in relation to the effect of the action of the attorney which are so often repeated by the court that the jury were likely to forget, by reason of such repetition, that such instructions were to be qualified by

other portions' of the charge. But we do not think that mere tautology in the language of the court would warrant the conclusion that the jury was misled.

The other proposition laid down by the court, that the appellant could not sue the respondent upon any matters that were settled and compromised without setting aside the settlement and placing the respondent *in statu quo*, is elementary.

Without reviewing minutely all the different portions of the charge, we think the case was plainly and fairly presented on both sides to the jury, and that they were not misled in any particular by the instructions of the court.

The appellant also raises strenuous objections to the action of the court in commenting on the testimony, in the following colloquy between the attorneys and the court:

"Question by Mr. Fishback: When you came back here from New York city what statement, if any, were you to make, Mr. Livesley, as to whether or not the assigned account was correct, or not, and as to whether they would pay it?

Mr. Humphries: The contract introduced in evidence shows that it was to be done without recourse.

The Court: If Livesley signed that contract, that ends the case. If that was the contract he made, if he made that contract which has been introduced in evidence, that ends this case.

"Mr. Humphries: He made that contract, unless he shows this paper has been changed since he signed it.

"The Court: That is what the court holds. He admits that the papers contain his signature."

While it might not have been necessary for the court to say this, it was so evidently the undisputed truth, both as to law and fact, that no error could be based upon it because no prejudice to plaintiff's rights could have been created thereby, for if Livesley made and

signed the contract that *did* end the case, and that was the whole question at issue, the appellant contending he did not make and sign this contract, and respondent that he did; and the court simply held that if he made that contract, unless it had been changed since he signed it, he would be bound by it, and would have no cause of action. We do not think this was stating to the jury the conclusion of the court with regard to the testimony of the appellant, but that he simply stated the legal effect of making and signing this contract, provided it was conceded that the appellant did make and sign it.

No substantial errors appearing, the judgment will be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.